# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH CASTELLANO,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY, DAVID TUELLER, and SCOTT ELKINS,<br><br>　　　　　Defendants. | **REPORT AND RECOMMENDATION TO DISMISS CLAIMS AGAINST DEFENDANTS BRIGHAM YOUNG UNIVERSITY, DAVID TUELLER, AND SCOTT ELKINS (ECF No. 7)**<br><br>Case No. 2:16-cv-01205-JNP-EJF<br><br>District Judge Jill N. Parrish<br>Magistrate Judge Evelyn J. Furse |

On November 29, 2016, pro se Plaintiff Joseph Castellano filed a Complaint against Brigham Young University (BYU), David Tueller, and Scott Elkins for employment discrimination and retaliation under the Americans with Disabilities Act (ADA) and the Utah Antidiscrimination Act (UADA). (Compl., ECF No. 3.) Defendants BYU and David Tueller (collectively, the BYU Defendants) move the Court to dismiss Mr. Castellano's claims. (Mot. to Dismiss (Mot.) 1, ECF No. 7.) The BYU Defendants argue the ADA and UADA claims against Mr. Tueller and Mr. Elkins fail because they do not qualify as "employers." (Id. at 1-2.) They also assert that the UADA claim against BYU fails because BYU does not constitute an "employer" under the UADA. (Id.) Lastly, the BYU Defendants contend that the disability discrimination claims fail to state a claim pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (Id.) Having reviewed the parties' briefings, the undersigned[1] RECOMMENDS dismissing the discrimination claims against BYU, Mr. Tueller, and Mr. Elkins without prejudice. The Complaint's claims under the UADA fail because the Act does not apply to religious educational

---

[1] District Judge Jill Parrish referred this case to Magistrate Judge Evelyn J. Furse under 28 U.S.C. § 636(b)(1)(B). (ECF Nos. 4 & 6.)

institutions.  The Complaint fails to state an ADA discrimination claim against BYU because Mr. Castellano only alleges an accommodation request made over a month after his termination.  Therefore, the undersigned RECOMMENDS dismissing the discrimination claim against BYU.  Mr. Castellano asserts no claims that either the UADA or the ADA authorizes against Mr. Tueller or Mr. Elkins.  Therefore, the undersigned RECOMMENDS dismissing Mr. Tueller and Mr. Elkins.  The BYU Defendants did not address Mr. Castellano's retaliation claim.  The undersigned, under 28 U.S.C. § 1915(e)(2)(B)(ii), reaches that claim and RECOMMENDS the District Judge dismiss the ADA retaliation claim for failing to allege sufficient facts to sustain it.

## FACTUAL BACKGROUND

The Court takes "as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiffs' complaint." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Mr. Castellano states the circumstances of the alleged employment discrimination in the Supporting Facts attached to his Complaint.  (Supp. Facts, ECF No. 3-1.)

Mr. Castellano began working as a chef at BYU around September 2011.  (Id.)  Mr. Castellano possessed a disability about which his employer knew.  (Id.)  On July 30, 2014, Mr. Castellano received an application "with numerous questions."  (Id.)  Mr. Castellano "did not fully comprehend [a] question due to [his] disability and answered 'no' to a question that [his] employer says should have been with a 'yes'."  (Id.)  Mr. Castellano alleges this error resulted in his termination that same day.  (Id.)  Mr.

Castellano contacted the HR Director on September 10, 2014 to complain of his treatment, and his concerns went unaddressed. (Id.)

**DISCUSSION**

Mr. Castellano proceeds pro se. The Court construes pro se pleadings liberally and holds them to a "less stringent standard." Smith v. United States, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting Garrett v. Selby, Connor, Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted)). However, the Court cannot act as an advocate for a pro se litigant, who must comply with the fundamental requirements of the Rules. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991); Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.") (quoting Garrett, 425 F.3d at 840). A pro se plaintiff's claims should survive a Rule 12(b)(6) motion, "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Smith, 561 F.3d at 1096 (quoting Hall, 935 F.2d at 1110).

**A.    The UADA Excludes BYU from the Definition of "Employer"**

The UADA prohibits particular discriminatory employment practices by employers. Utah Code Ann. § 34A-5-106(1)(a)(i). The two discriminatory practices for which Mr. Castellano complains, discharge based upon disability and retaliation based upon disability, fall within this prohibition. Utah Code Ann. § 34A-5-106(1)(a)(i)(H). However, the UADA expressly exempts "religious educational institution[s]" from the definition of employer. Utah Code Ann. § 34A-5-102(1)(h)(ii)(A). While the Complaint does not make any allegations about BYU's religious connections, the Court takes

3

judicial notice of the fact that the Church of Jesus Christ of Latter-day Saints "founded, support[s], and guide[s]" BYU.  See Mission & Aims of BYU, http://aims.byu.edu/, last visited July 30, 2017 (acknowledging relationship).  In considering whether BYU qualifies as "a religious educational institution," the undersigned considers the language of the definition of what an "'Employer' does not include." Utah Code Ann. § 34A-5-102(1)(h)(ii).  That definition sweeps broadly to exclude all types of employers connected with a religious institution.  Therefore, the undersigned concludes BYU falls within that exclusion.  Hence, the undersigned RECOMMENDS dismissal because Mr. Castellano cannot bring his UADA claims against BYU.

**B.    Neither the ADA nor the UADA Authorize Individual Capacity Suits**

Mr. Castellano names David Tueller and Scott Elkins as Defendants in his Complaint but does not explain their relationship to BYU or himself beyond listing their "[p]resent mailing address or business location" as BYU.  (Compl. 2, ECF No. 3.)

"[T]he ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition."  Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir. 1999) (dismissing individual defendants from ADA claims).  The ADA defines "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each workingday in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 12111.

The ADA does not allow for the individual liability of Mr. Tueller or Mr. Elkins predicated on their roles as employees at BYU.  See Sauers v. Salt Lake Cty., 1 F.3d 1122, 1125 (10th Cir. 1993) (finding individual capacity suits "inappropriate" under Title

VII); Butler, 172 F.3d at 744 (finding "no meaningful distinction between the definitions of 'employer' in Title VII and the ADA"). If by naming Mr. Tueller and Mr. Elkins in his Complaint, Mr. Castellano hoped to implicate them as agents of BYU, directly naming BYU renders their inclusion unnecessary. Recovery against the employer may proceed by "either naming the supervisory employees as agents of the employer or by naming the employer directly." Sauers, 1 F.3d at 1125 (quoting Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991)).

Mr. Castellano names BYU as a Defendant, creating the same potential liability as naming Mr. Tueller and Mr. Elkins as agents of the institution. Thus Mr. Castellano need not name Mr. Tueller or Mr. Elkins in their official capacities. Therefore, the undersigned RECOMMENDS dismissal of the ADA claims against Mr. Tueller and Mr. Elkins.

The UADA also precludes individual capacity suits against Mr. Tueller and Elkins. "[T]he UADA was modeled after Title VII of the Civil Rights Act of 1964," Gottling v. P.R. Inc., 2002 UT 95, ¶ 16, 61 P.3d 989, and "in interpreting the [UADA], the substantial body of federal case law interpreting Title VII is 'useful.'" Darvish v. Labor Comm'n Appeals Bd., 2012 UT App 68, ¶ 23, 273 P.3d 953, 959 (quoting Viktron/Lika v. Labor Comm'n, 2001 UT App 394, ¶ 6, 38 P.3d 993). Accordingly, without guiding law to the contrary, the UADA mirrors the prohibition against individual capacity suits found in Title VII. See Sauers, 1 F.3d 1122, 1125 (finding individual capacity suits "inappropriate" under Title VII). Furthermore, Mr. Castellano cannot sue Mr. Tueller and Mr. Elkins as agents of BYU under the UADA because the UADA excludes BYU from the definition of

employer, as discussed above. Hence, the undersigned RECOMMENDS dismissal of the UADA claims against Mr. Tueller and Mr. Elkins.

### C. Mr. Castellano's ADA Discrimination Claim Fails to Allege a Request for Accommodation Prior to Termination

Mr. Castellano's ADA discrimination claim against BYU fails to state a claim upon which the Court may grant relief. Even proceeding pro se, Mr. Castellano must "'set forth plausible claims' animating the elements of [his] causes of action." See Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2012)). A court must engage in a context specific inquiry, utilizing "judicial experience and common sense," to determine whether a plaintiff's claims rise to the level of plausibility. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Hall, 935 F.2d at 1110. Courts disregard legal allegations masquerading as facts. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). If a pro se party fails to allege sufficient facts to support a legal theory, courts will not fill in the factual gaps. Smith, 561 F.3d at 1096 (citing Whitney v. New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997)).

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." Khalik, 671 F.3d at 1192. A prima facie case of disability discrimination includes the following elements: "[the plaintiff] (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3)

suffered discrimination by an employer or prospective employer because of that disability." Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1308 (10th Cir. 2017) (quoting E.E.O.C. v. C.R. Eng., Inc., 644 F.3d 1028, 1037–38 (10th Cir. 2011)). Such discrimination can include failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee." C.R. England, 644 F.3d at 1048 (quoting 42 U.S.C. § 12112(b)(5)(A)) (ellipses in original).

The BYU Defendants argue that Mr. Castellano never sought accommodation for his disability, thus foreclosing the possibility of a successful ADA discrimination claim. (Mot. 6-10, ECF No. 7.) Specifically, the BYU Defendants argue that an "employer is permitted to discipline the employee for the conduct that occurred prior to the disclosure, even if the disability caused or contributed to the conduct." (Id. at 6.) In support the BYU Defendants cite as persuasive authority cases from the Seventh, Eighth, and Third Circuits. (See id. at 6-7 (citing Buie v. Quad/Graphics, Inc., 366 F.3d 496, 507 (7th Cir. 2004), Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 331-34 (3d Cir. 2003), and Hill v. Kan. City Area Transp. Auth., 181 F.3d 891, 894 (8th Cir. 1999)).) In a subsequent Notice of Supplemental Authority, the BYU Defendants bring the Court's attention to a recently decided Tenth Circuit case, DeWitt v. Sw. Bell Tel. Co., 845 F.3d 1299 (10th Cir. 2017), discussing the same legal issues. (Notice of Suppl. Authority, ECF No. 9.)

DeWitt controls. In that case, Ms. DeWitt worked at Southwestern Bell Telephone Company as a customer service representative. Dewitt, 845 F.3d at 1304. Ms. DeWitt had Type I diabetes with insulin dependence; when her blood sugar levels

7

fell, she could "experience sweating, shakiness, fatigue, lethargy, confusion, and poor coordination." Id. Southwestern Bell knew Ms. DeWitt had this condition and allowed her to take breaks to eat snacks or drink to raise her blood sugar. Id. In January 2010, Ms. DeWitt failed to remove phone service on a customer's account after the customer's cancellation. Id. at 1305. This action constituted a violation of Southwestern Bell's Code of Business Conduct and a potentially terminable offense. Id. After reviewing the incident, Southwestern Bell gave Ms. DeWitt a last chance. Id. On March 3, 2010, during a severe drop in blood sugar – which Ms. Dewitt could not counteract by snacking – Ms. DeWitt dropped two customer calls, violating the Southwestern Bell Code of Business Conduct and using up her last chance. Id. Ms. DeWitt explained how her low blood sugar caused the error and that she did not remember the calls. Id. Five days later, Southwestern Bell fired Ms. DeWitt. Id. at 1305-06.

The Tenth Circuit upheld the grant of summary judgment in favor of Southwestern Bell on Ms. DeWitt's failure to accommodate claim. The court determined, "[t]he ADAAA does not require employers to reasonably accommodate an employee's disability by overlooking past misconduct—irrespective of whether the misconduct resulted from the employee's disability." Id. at 1316. The court characterized Ms. DeWitt's claim as a request for "retroactive leniency" on past mistakes rather than a request for accommodation to prevent future errors. Id.

A request for accommodation requires the employer to engage in an "interactive process" discussing how accommodation might occur. Id. at 1315-16 (quoting C.R. England, 644 F.3d at 1049). Such request must put the employer on notice "of both the disability and the employee's desire for accommodations for that disability." C.R.

8

England, 644 F.3d at 1049 (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999)).  Aside from making clear these two distinct points, an employee need not make a written request, make the request directly, or use the "magic words 'reasonable accommodation.'" Id. (quoting Taylor, 184 F.3d at 313).

In making its determination, the court of appeals relied upon an EEOC guidance document to explain the proper relationship between a disciplinary action and an accommodation request.  DeWitt, 845 F.3d at 1317–18 (citing EEOC FACT SHEET, THE AMERICANS WITH DISABILITIES ACT:  APPLYING PERFORMANCE AND CONDUCT STANDARDS TO EMPLOYEES WITH DISABILITIES ("Fact Sheet")).  While the guidance explained, "an employee 'may ask for [a] reasonable accommodation before or after being told of performance problems,'" id. at 1317 (quoting Fact Sheet § III(A)(5)), the court held the guidance supported the conclusion that "an employer is not obliged to apply the brakes on an ongoing disciplinary process based on past performance deficiencies simply because an employee requests an accommodation." Id. at 1317-18.  Southwestern Bell's actions passed under this rubric because Ms. DeWitt's last chance served as an ongoing disciplinary process.

Turning to the case at hand, Mr. Castellano's ADA discrimination claim fails because Mr. Castellano requested retroactive leniency.  Assuming all facts alleged in the Complaint as true, Mr. Castellano committed the error on the application on July 30, 2014, and BYU knew of his disability.  (Supp. Facts, ECF No. 3-1.)  However, Mr. Castellano did not request accommodation until September 10, 2014, over one month after his termination.  (Id.)  Thus, rather than asking BYU for an accommodation in his working conditions, Mr. Castellano requested BYU revisit its termination decision more

than a month after the fact. "[T]he timing of a request for reasonable accommodation is important," DeWitt, 845 F.3d at 1317 (quoting Fact Sheet § III(A)(5)), and the timing does not favor Mr. Castellano's claim. The Tenth Circuit's holding that an employer need not afford retroactive leniency during an ongoing disciplinary process would certainly extend to a request for retroactive leniency made after a completed disciplinary process. Therefore, the undersigned RECOMMENDS the District Court dismiss Mr. Castellano's ADA discrimination claim without prejudice.

### D. Mr. Castellano's Retaliation Claim Fails to Allege Protected Activity Prior to Adverse Action

In addition to a general claim of employment discrimination, Mr. Castellano also asserts a claim of retaliation under the ADA. (See Supp. Facts, ECF No. 3-1 ("I have been subjected to unlawful retaliation.").) Failure to bring a successful disability discrimination claim does not prevent Mr. Castellano from bringing an ADA retaliation claim. See Heiman v. United Parcel Serv., Inc., 12 F. App'x 656, 664 (10th Cir. 2001), as corrected (Apr. 5, 2001) (unpublished) (deciding disability discrimination and retaliation claims separately) (citing Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 714 (8th Cir. 2000)). Mr. Castellano offers little to establish that retaliation occurred in the Complaint, and the BYU Defendants offer no specific argument as to why the Court should dismiss the retaliation claim. Mr. Castellano's status as a pro se litigant may explain why he did not see the need to explain his allegations further at the pleading stage. Nonetheless, the undersigned "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Smith, 561 F.3d at 1096 (quoting Whitney, 113 F.3d at 1173-74). To survive a motion to dismiss, Mr. Castellano need not set forth every element of a prima facie case of

retaliation, rather the Court engages in a context specific inquiry to determine if the plaintiff states plausible claims. Khalik, 671 F.3d at 1192; Iqbal, 556 U.S. at 679. However, "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." Khalik, 671 F.3d at 1192.

> In order to establish a prima facie case of retaliation, [a plaintiff] must show: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."

Proctor v. United Parcel Serv., 502 F.3d 1200, 1208 (10th Cir. 2007) (quoting Argo v. Blue Cross & Blue Shield, 452 F.3d 1193, 1202 (10th Cir. 2006)).

Despite the lack of argument from the BYU Defendants, 28 U.S.C. § 1915(e)(2)(B)(ii) allows a court to dismiss an in forma pauperis case that "fails to state a claim on which relief may be granted" on its own initiative. This authority coupled with the clear insufficiency of Mr. Castellano's pleading, support the dismissal of Mr. Castellano's retaliation claim. Specifically, Mr. Castellano's factual allegations cannot create a plausible inference of protected activity and a causal connection to adverse action.

While a request for accommodation could constitute protected activity, Foster v. Mountain Coal Co., 830 F.3d 1178, 1187 (10th Cir. 2016), the only alleged request for accommodation occurred over one month after Mr. Castellano's termination, when Mr. Castellano contacted BYU's HR Director on September 10, 2014. (Supp. Facts, ECF No. 3-1.) If the September 2014 request serves as protected activity, no causal connection could exist between the request and the materially adverse action – Mr. Castellano's termination – because the adverse action occurred before the protected activity. See Jencks v. Modern Woodmen, 479 F.3d 1261, 1264 (10th Cir. 2007)

11

(requiring adverse action to occur "either after or contemporaneous with the employee's protected action" to establish prima facie retaliation claim). No other possible protected activity appears on the face of the Complaint.

To plead a retaliation claim successfully, Mr. Castellano need not establish every element of a prima facie case but merely include enough factual allegations to "nudge[] [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 569–70. The facts as alleged present no possible way to find a causal connection between protected activity and adverse action, and therefore, no plausible claim of retaliation. The undersigned RECOMMENDS dismissal of the retaliation claim against BYU pursuant to Rule 12(b)(6).

## LEAVE TO AMEND

Although the above analysis proceeds on the presumption of truth in all the Complaint's facts, certain inconsistencies and ambiguities exist in submissions that Mr. Castellano may be able to cure through amending the Complaint. Specifically, the filings remain unclear as to when the BYU Defendants received notice of Mr. Castellano's disability, when Mr. Castellano actually answered the question at issue, what communications occurred between the parties regarding accommodation, and when.

According to the BYU Defendants, Mr. Castellano filled out the application on September 22, 2011, before his hiring. (Mot. 3, ECF No. 7.) BYU asserts it reviewed that application in June 2014. (Id. at 2.) BYU admits firing Mr. Castellano on July 30, 2014. (Id. at 3.) The Complaint alleges Mr. Castellano completed the application on July 30, 2014. (Supp. Facts, ECF No. 3-1.) However, in his Response, Mr. Castellano

writes BYU "review[ed] plaintiff's application 3 years later," effectively agreeing with BYU's assertion that Mr. Castellano completed the Application in September of 2011. (Resp. to Reply of Mot. to Dismiss/Mot. to Proceed 2, ECF No. 14; Mot. 2-3, ECF No. 7.)

Additionally, BYU asserts that Mr. Castellano first raised the issue of his disability and its effect on his understanding of the question on September 10, 2014. (Mot. 3, ECF No. 7.) In his Response of Supplemental Authority, Mr. Castellano argues that BYU had notice of his disability beginning June 28, 2012. (Resp. of Suppl. Authority 2, ECF No. 11.) Mr. Castellano does not explain why BYU had this report or whether it discussed any accommodations with him at that time.

Mr. Castellano should have the opportunity to amend his Complaint now having an understanding of the requirements to plead each cause of action. At this time, the additional facts alleged by both sides in the briefings do not provide a clear enough picture to conclude one way or the other whether Mr. Castellano can ultimately state a claim. Should a pro se plaintiff's original complaint miss "important element[s] that may not have occurred to him," a court will grant leave to amend. Hall, 935 F.2d at 1110. After providing opportunity to amend, a court may properly dismiss with prejudice upon concluding that further chances to amend would prove "futile." Gee v. Pacheco, 627 F.3d 1178, 1195 (10th Cir. 2010). Further factual allegations, establishing when accommodation talks first occurred and when Mr. Castellano completed the application, could help the Court determine whether Mr. Castellano requested retroactive leniency regarding his failure to accommodate claim and whether causality could exist regarding

his retaliation claim.  Therefore, the undersigned RECOMMENDS the District Court allow Mr. Castellano thirty days to amend his Complaint.

## RECOMMENDATION

For the reasons discussed above, the undersigned RECOMMENDS the District Court dismiss Mr. Castellano's claims against BYU, David Tueller, and Scott Elkins without prejudice pursuant to Rule 12(b)(6) and grant Mr. Castellano thirty days to amend.

The Court will send copies of this Report and Recommendation to the parties and notifies them of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the Clerk of the Court, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service thereof.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 3d day of August, 2017.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge